IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL FRANKLIN, KAREN FRANKLIN, CHRISTOPHER KENDALL, and all similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | Case No. 17-cv-06922-RBK-AMD |

**DEFENDANT EQUIFAX INFORMATION SERVICES, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STAY OR FOR AN EXTENSION OF TIME TO RESPOND TO AMENDED COMPLAINT AND PENDING MOTIONS**

The Court should stay this FCRA case because it will soon be consolidated with scores of other FCRA cases raising similar questions concerning the data breach that struck Equifax earlier this year. Plaintiffs ask, in effect, to be moved to the head of the line for special treatment, but nothing in their complaint or their motion for preliminary relief sets them apart from the other cases that will be consolidated—a fact the U.S. District Court for the District of Nevada recognized when it granted a stay in nearly identical circumstances just days ago. *See* Order, *Knepper v. Equifax Info. Servs.*, No. 2:17-cv-02368-KJD-CWH, Doc. 39 (D. Nev. Oct. 2, 2017) (*Knepper* Order).

Plaintiffs' arguments against a stay are bound up in the merits of their motion for a preliminary injunction and temporary restraining order. But that motion is itself meritless. As Defendant Equifax Information Services (EIS) will explain in its forthcoming opposition to Plaintiffs' motion for preliminary relief, Plaintiffs seek injunctive relief forbidden by the Fair Credit Reporting Act (FCRA),[1] are unlikely to succeed on the merits of their case, and would not

---

[1] On this point, see, for example, *Knechtel v. Choicepoint, Inc.*, Civil No. 08–5018 (RBK/KMW), 2009 WL 4123275, at *7 (D.N.J. Nov. 23, 2009) (Kugler, J.), which held that "[u]nder the FCRA, a private party cannot seek injunctive relief," and noted further that courts

1

suffer irreparable harm—much less the extreme or very serious damage required for a *mandatory* injunction—if the relief they seek is denied. *See Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citing *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2nd Cir. 1995)).

A temporary stay—allowing the Judicial Panel on Multidistrict Litigation (JPML) to consolidate this case with the more than two hundred other actions that have been filed related to the Equifax data breach—will not harm Plaintiffs, but will reduce the risk of inconsistent rulings and unnecessary prejudice to EIS. And a stay will prevent the waste of this Court's time and effort deciding questions—like whether the information compromised in the data breach was a "consumer report" within the definition of the FCRA—that are also at issue in those other cases and will necessarily be re-decided by the MDL court. For these and other reasons, numerous courts have already granted stays in approximately 100 related actions.

The Court should grant a stay in this case as well.

## ARGUMENT

This is not a case of "consumer fraud." ECF No. 11 at 1. It is a case that relies on FCRA theories to claim an administrative infraction from which no actual harm flows to Plaintiffs. Plaintiffs' New Jersey claims, to the extent the FCRA does not preempt them, hinge on whether EIS violated the FCRA. *See, e.g.*, ECF No. 6 at 7 (contending that "[u]nder the New Jersey Consumer Fraud Act, Plaintiffs and the putative New Jersey Subclass are entitled to equitable relief from Equifax's ongoing violations of state *and federal* law.") (emphasis added). That question also underlies numerous other complaints filed against EIS and its parent Equifax, Inc. in the wake of the data breach. *E.g.*, *Abraham v. Equifax Inc.*, 1:17-cv-03453-TWT (N.D. Ga.); *Zweig v. Equifax, Inc.*, 1:17-cv-05366 (E.D.N.Y.); *Hamilton et al. v. Equifax, Inc.*, 2:17-cv-06899 (C.D. Cal.); *Greenwald et al. v. Equifax, Inc.*, 1:17-cv-00438 (D.N.H.). EIS believes that

---

have held that "where a litigant seeks injunctive or equitable relief under state law claims for actions falling within the FCRA's scope of coverage, such relief is pre-empted."

216338777

- 2 -

those contentions are meritless, but that is a question that should be decided by the District Judge to whom the consolidated MDL proceeding is transferred.

Contrary to Plaintiffs' suggestion that stays are only "appropriate when the JPML has already issued a conditional transfer order," ECF No. 30 at 9 & n.21 (citing *Noland v. Enter. Holdings, Inc.*, 2010 WL 2555122, at *1), courts "frequently grant stays *when an MDL decision is pending*, particularly when"—as here—"the plaintiff would not be prejudiced by a slight delay." *Noland*, 2010 WL 2555122, at *1 (emphasis added). Nor does Plaintiffs' desire for a preliminary injunction and temporary restraining order strip this Court of its ability to manage its own docket by granting a stay. *See Hertz Corp. v. The Gator Corp.*, 250 F. Supp. 2d 421, 428 (D.N.J. 2003) (granting motion to stay pending transfer to MDL in the face of preliminary injunction motion); *see also Oklahoma ex rel. Pruitt v. U.S. E.P.A.*, No. 15-CV-0381-CVE-FHM, 2015 WL 4607903, at *4 (N.D. Okla. July 31, 2015) (same); *Harris v. Skolnik*, No. 2:10-CV-00365-RLH, 2011 WL 64081, at *1 (D. Nev. Jan. 7, 2011) (same).

A stay pending the JPML's consideration of centralization is warranted here. The four factors this Court should consider—conservation of judicial resources in the face of a likely transfer to a court tasked with deciding the same issues, the hardship imposed on EIS by duplicative litigation if the matter is not stayed, the lack of injury to Plaintiffs inherent in a brief delay, and the briefness of that delay—all favor a stay. *See Pennsylvania ex rel. Kane v. McGraw-Hill Cos., Inc.*, No. 1:13-cv-605, 2013 WL 1397434, at *2 (M.D. Pa. Apr. 5, 2013) (combining second and third factors); *Vasvari v. Rite Aid Corp.*, No. 09-cv-2069, 2010 WL 3328210, at *2 (M.D. Pa. 2010).

A stay has already been granted in another Equifax data-breach case raising nearly identical issues, in nearly identical language, by a substantially similar list of attorneys. *See Knepper* Order. Moreover, approximately 100 related cases around the Country—including one in this Court and all 68 cases brought in Equifax's home district in Atlanta, Georgia—have been stayed. *See, e.g.*, *Dowgin v. Equifax, Inc.*, 17-cv-06923-RBK-AMD (D.N.J.); *McGonnigal et al. v. Equifax, Inc.*, 17-cv-03422-WSD, Dkt. 18 (N.D. Ga. Oct. 11, 2017) (omnibus order entered by

216338777

Chief Judge Thrash staying 68 related cases pending in the Northern District of Georgia); *see also McHill v. Equifax Inc.*, 3:17-cv-01405-AC (D. Or.); *Barker v. Equifax, Inc.*, 8:17-cv-01560-JAK-KS (C.D. Cal.); *Smart v. Equifax Inc.*, 2:17-cv-01872-KJM-EFB (E.D. Cal.); *Avise v. Equifax, Inc.*, 8:17-cv-01563-JAK-KS (C.D. Cal.); *McCall v. Equifax Info. Servs., LLC*, 2:17-cv-02372-MMD-GWF (D. Nev.); *Bandoh-Aidoo v. Equifax, Inc.*, 2:17-cv-06658-JAK-KS (C.D. Cal.); *King v. Equifax, Inc.*, 1:17-cv-03157-JMS-MJD (S.D. Ind.); *Rice v. Equifax, Inc.*, 1:17-cv-00156-IMK (W.D. Va.); *Perkins et al. v. Equifax Inc.*, 1:17-cv-03479-ELR (N.D. Ga.); *Tada v. Equifax, Inc.*, 2:17-cv-06666-JAK-KS (C.D. Cal.); *Pavitt v. Equifax, Inc.*, 2:17-cv-01363 (W.D. Wash.); *Austin v. Equifax, Inc.*, 2:17-cv-04045-LDD (E.D. Pa.); *Scott v. Equifax Inc.*, 2:17-cv-06715 (C.D. Cal.); *Pavesi v. Equifax, Inc.*, 1:17-cv-03476-AT (N.D. Ga.); *Clark v. Equifax Inc.*, 1:17-cv-03497-MHC (N.D. Ga.); *Walker v. Equifax, Inc.*, 17-cv-01527-HNJ (N.D. Ala.); *Eastman v. Equifax Inc.*, 17-cv-03512-TWT (N.D. Ga.); *Ramsay v. Equifax, Inc.*, 4:17-cv-2783-LNH (S.D. Tex.); *Anderson v. Equifax, Inc.*, 2:17-cv-00156-DLB-CJS (E.D. Ky.); *Cole v. Equifax, Inc.*, 17-cv-11712-RGS (D. Mass.); *Eppy v. Equifax, Inc.*, 0:17-cv-61833-BB (S.D. Fla.); *Amuial v. Equifax, Inc.*, 1:17-cv-23405-DPG (S.D. Fla.); *Daugherty v. Equifax, Inc.*, 4:17-cv-00597-BSM (E.D. Ark.); *Martinez v. Equifax, Inc.*, 17-23510-CIV (S.D. Fla.); *Podalsky v. Equifax, Inc.*, 17-23465-CIV (S.D. Fla.); *Geller v. Equifax, Inc.*, 17-cv-81056-RLR (S.D. Fla.); *Duran v. Equifax, Inc.*, 17-cv-01571-JAK (C.D. Cal.); *Schifano v. Equifax, Inc.*, 17-cv-06996 (C.D. Cal.); *Collins v. Equifax, Inc.*, 17-cv-01561 (C.D. Cal.).[2]

**A.   A Stay Would Conserve Judicial Resources.**

Plaintiffs do not disagree that denying a stay of this action would result in this Court expending time and energy on work that will later be duplicated and possibly vacated by the transferee court in the likely event this case is consolidated. Instead, they contend that by granting a brief stay of these proceedings, this Court would be "sanctioning consumer fraud,"

---

[2] A number of Equifax's motions to stay in related cases are still pending, and Equifax will continue to file motions to stay in additional cases in the order of its deadlines to respond to those complaints.

216338777

ECF No. 11 at 9—a reference to their FCRA-preempted New Jersey state-law claims. But not only does Plaintiffs' overwrought contention put the merits cart before the procedural horse, it is simply not relevant to whether a stay would preserve judicial resources—which it would.

A "primary benefit of consolidation" is to prevent "conflicting decisions on important pretrial legal issues." *Hertz*, 250 F. Supp. 2d at 427. The danger of such "conflicting decisions" is manifest here. Plaintiffs' claims and request for injunctive relief in this case turn on whether information compromised in the data breach was a "consumer report" within the definition in the FCRA: they contend that EIS has improperly failed to include "[i]dentification of each person … that procured a *consumer report*" on their consumer disclosures under 15 U.S.C. § 1681g(a)(3)(A)."[3] *See* ECF No. 6 at 6.

The same issue—whether the hackers obtained "consumer reports"—is at the heart of dozens of other complaints that will be consolidated in the MDL. *E.g.*, *Abraham*, 1:17-cv-03453-TWT, Dkt. 1 at 37 (N.D. Ga. Sept. 8, 2017); *Zweig*, 1:17-cv-05366, Dkt. 1 at 29 (E.D.N.Y. Sept. 13, 2017); *Hamilton*, 2:17-cv-06899, Dkt. 1 at 26 (C.D. Cal. Sept. 19, 2017); *Greenwald*, 1:17-cv-00438, Dkt. 1 at 29 (D.N.H. Sept. 21, 2017). Those complaints claim violations of 15 U.S.C. §§ 1681b and 1681e(a), both of which similarly turn on whether the compromised information was a "consumer report." *See* 15 U.S.C. § 1681b (providing conditions under which a CRA may furnish a "consumer report") & § 1681e(a) (requiring CRAs to "maintain reasonable procedures … to limit the furnishing of consumer reports to the purposes listed under § 1681b"). The MDL court will address this central question, and this Court should not decide the issue before the MDL court has had the chance to consider it.

Even if there were uncertainty about whether this case is related to or in conflict with the

---

[3] The malicious hackers who compromised Equifax's systems and accessed consumer information accessed only names, birthdates, addresses, Social Security numbers, and driver's license numbers for the vast majority of affected consumers. That header information does not "bear[] on" consumers' "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living," and it is therefore not a "consumer report" within the definition of the FCRA. 15 U.S.C. § 1681a(d)(1); *see also, e.g.*, *Bickley v. Dish Network, LLC*, 751 F.3d 724, 729 (6th Cir. 2014).

216338777

other cases in the likely MDL, that too is a judgment for the transferee court. As the JPML has said, "resolution of potentially conflicting class actions are best made by the transferee court." *In re Plumbing Fixtures*, 308 F. Supp. 242, 243–44 (J.P.M.L. 1970) (pointing out that "a potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings which will include an early resolution of such potential conflicts."); *see also* Multidistrict Litigation Manual § 9:4 (2017) ("[L]itigants have frequently argued against transfer for consolidated or coordinated pretrial proceedings on the grounds that their action would not benefit from coordination or consolidation. The Panel has generally responded to this argument by ignoring it on the question of transfer and by acknowledging that the transferee court can enter appropriate orders for the management of the transferred cases."). The only way to ensure an orderly MDL process is to permit a single court to decide which of the data-breach cases, if any, should be tried separately. Any other procedure would risk over two hundred inconsistent and conflicting decisions about which cases belong in the MDL.

In any event, this case belongs in the MDL. Despite their insistence that this case is somehow different, *see, e.g.*, ECF No. 11 at 7–8, attorneys for Plaintiffs filed a similar complaint and the same boilerplate TRO motion in the *Knepper* case and have made only token efforts at distinguishing their clients' claims here from those they similarly contended were unique and deserving of special treatment there. *Compare generally*, ECF No. 6 *with Knepper*, No. 2:17-cv-02368-KJD-CWH, ECF Nos. 6 & 7; *compare* ECF No. 11 *with Knepper*, No. 2:17-cv-02368-KJD-CWH, ECF No. 30 (Plaintiffs' Opposition to Motion to Stay).

There is, however, one difference between this case and *Knepper* that Plaintiffs elide. In *Knepper*, plaintiffs asserted claims under a Nevada credit-reporting statute that they (incorrectly) contended provided a standard of conduct independent from that imposed by the FCRA. *See Knepper*, No. 2:17-cv-02368-KJD-CWH, ECF Nos. 6 & 7 at 3. Here, Plaintiffs do not proffer even that insufficient fig leaf—their entire case rests on their allegations that EIS violated the FCRA *and by doing so* committed consumer fraud under the New Jersey statute. *See* ECF No. 6

216338777

- 6 -

at 7 ("Under the New Jersey Consumer Fraud Act, Plaintiffs … are entitled to equitable relief from Equifax's ongoing violations of state *and federal* law") (emphasis added). In short, Plaintiffs offer even *less* of a reason to deny a stay here than their attorneys did in *Knepper*.

Denying a stay would therefore waste this Court's time and effort, because it would require this Court to decide issues that will *necessarily* be decided again with respect to these parties if and when this case is consolidated. *See Gorea v. Gillette Co.*, No. 05-2425 MP, 2005 WL 2373440, at *1 (W.D. Tenn. Sept. 26, 2005) ("[A] stay is warranted in this case … [because otherwise] the court would have to use judicial resources in making rulings … in a case over which it might ultimately lose jurisdiction."). Thus, staying proceedings here until the JPML decides whether to consolidate these actions is warranted. *See Hertz*, 250 F. Supp. 2d at 427 (denying a stay would potentially result "in conflicting decisions by this Court and the transferee court … thereby decreasing a primary benefit of consolidation, namely consistent rulings on important pretrial legal issues").

B.     A Stay Would Limit The Risk of Prejudice to Equifax.

Denying a stay would risk imposing on EIS the very hardships that centralization under § 1407 is aimed to prevent. *See Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 372 (S.D.N.Y. 2013). More than 200 cases have been filed relating to the data breach, and nothing sets this one apart for the special treatment Plaintiffs seek: it presents FCRA issues along with state law issues that the FCRA likely preempts. *See, e.g.*, *Melrath v. Equifax, Inc.*, 1:17-cv-01324-UNA, Dkt. 1, 18-19 (D. Del. Sept. 18, 2017) (alleging violations of FCRA and Delaware's Consumer Fraud Act); *Gibson v. Equifax Inc.*, 5:17-cv-00973-D, Dkt. 33-37 (W.D. Okla. Sept. 8, 2017) (alleging violations of FCRA and 38 various state data-breach statutes); *King v. Equifax, Inc.*, 1:17-cv-03157-JMS-MJD, Dkt. 1, 16-17 (S.D. Ind. Sept. 8, 2017) (alleging violations of FCRA and Indiana Deceptive Consumer Sales Act). The imminent risks of unnecessary proceedings, inconsistent rulings, duplicative discovery, and re-litigating the same claims in multiple jurisdictions are all present here and all recognized prejudices weigh in favor

of a stay. *Packer v. Power Balance, LLC*, No. CIV.A. 11-802 WJM, 2011 WL 1099001, at *2 (D.N.J. Mar. 22, 2011) ("Absent a stay, Defendant could be compelled to unnecessarily litigate claims in different fora, become subject to competing court orders, and undercut the primary purpose of the MDL."); *A.D. v. Pfizer, Inc.*, No. 13-cv-02466-JST, 2013 WL 3889159, at *2 (N.D. Cal. July 26, 2013); *Paul v. Aviva Life & Annuity Co.*, No. 09-1038, 2009 WL 2244766, at *2 (N.D. Ill. July 27, 2009); *Bd. of Tr. of Teachers' Ret. Sys. of Ill. v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002).

Plaintiffs' argument to the contrary betrays a myopic focus on their doomed preliminary-injunction motion. They contend that their bid for a TRO and preliminary injunction means that their case should proceed before the other 200 cases that have been filed relating to the data breach. Not so—particularly since Plaintiffs' motion for emergency injunctive relief has no merit. *See Oklahoma ex rel. Pruitt*, 2015 WL 4607903, at *4 (granting motion to stay pending transfer to MDL in the face of preliminary injunction motion); *Hertz*, 250 F. Supp. 2d at 428 (same); *see also Harris*, 2011 WL 64081, at *1 (same). Plaintiffs should not be able to leverage their improper request for emergency relief, lacking any plausible claim of irreparable harm, to jump the line ahead of the hundreds of other plaintiffs who have filed similar lawsuits. *See Knepper* Order at 3-4. This Court can do its part to limit the risk of prejudice to EIS by staying this action.

C.   **A Stay Will Not Prejudice Plaintiffs.**

This is an FCRA case, not a New Jersey consumer-fraud case. Plaintiffs' New Jersey claims hinge on the FCRA, ECF No. 6 at 7, and (as will be demonstrated in EIS's forthcoming opposition to the motion for preliminary injunctive relief) are preempted by it. And under the FCRA, Plaintiffs are simply not entitled to injunctive relief. *See supra*, n.1.

Aware of this fatal deficiency, Plaintiffs repeatedly seek to recast their FCRA claims as "consumer fraud," but there has been no fraud here. The "uncertainty" of which Plaintiffs complain—based on the omission of information regarding the data breach from their consumer

disclosures—is not remotely an irreparable injury, as the court recognized in *Knepper*. *See Knepper* Order at 3 ("Plaintiffs' duty to use common sense, a third party credit protection service, and/or the free credit protection services offered by [EIS] would be the same."). And even assuming consumers were suffering real harms as a result of the data breach, EIS has already acted to remedy those alleged harms for all U.S. consumers *regardless* of whether their information was compromised in the breach. Plaintiffs misread Equifax Interim CEO Paulino do Rego Barros Jr.'s September 27 op-ed in the *Wall Street Journal*, which is attached as Exhibit A (and, contrary to Plaintiffs' assertions, also available for free via Equifax's website—a fact of which Equifax made these same attorneys aware in its reply to their previous boilerplate opposition to the stay in *Knepper*). In that article, Mr. Barros explains that Equifax (1) extends *free* credit freezes through January 2018; (2) extends *free* credit protection services—which include *free* Equifax credit reports and three-bureau monitoring—to those who sign up through January 2018; and (3) promises that Equifax credit freezes will be available through a simple online portal *for free, for life* by the end of January 2018. Plaintiffs' cavil that Equifax "*expects to receive payment*" for providing these services, ECF No. 11 at 10, is simply wrong—as wrong, indeed, as it was the last time they said it, *see Knepper*, ECF No. 30 at 8.

Accordingly, Plaintiffs will not be prejudiced by a brief stay pending a transfer that is likely to be granted. *See Royal Park Invs. SA/NV*, 941 F. Supp. 2d at 371 (finding no prejudice where "[d]ue to the similarity of the Plaintiffs' claims to those pending in the Countrywide MBS MDL, the JPML is likely to transfer the cases promptly"); *see also Giles v. POM Wonderful LLC*, No. 10-61684-CIV, 2010 WL 4630325, at *1 (S.D. Fla. Nov. 8, 2010) (stay pending MDL transfer "'can increase efficiency and consistency, particularly when the transferor court believes that a transfer order is likely'") (quoting *Manual for Complex Litigation* § 22.35 (4th ed. 2004)).

**D.    Any Stay Will Be Brief.**

Plaintiffs do not recognize that courts in this Circuit also consider a fourth factor in stay requests—namely, the length of the stay. *Pennsylvania ex rel. Kane*, 2013 WL 1397434, at *2.

As EIS made clear in its motion, the stay it requests will be "relatively short, … easily measurable, and … directly tied to a tangible event"—the JPML's transfer order. *Id*. at *5. This factor clearly favors a stay.

## CONCLUSION

EIS respectfully requests that this Court stay all proceedings in this matter until the JPML rules on the transfer of this case. If the Court declines to stay this case, EIS requests that the Court extend its deadline to respond to the Complaint to 30 days from the court's order denying the motion to stay, relief Plaintiffs have not contested.

Respectfully submitted, this 3rd day of October, 2017.

        **CLARK HILL PLC**
        */s/ Joann Needleman (031221994)*
        Joann Needleman
        */s/ Scott B. Galla (038792012)*
        Scott B. Galla
        One Commerce Sq.
        2005 Market Street, Suite 1000
        Philadelphia, PA 19103
        215-640-8536
        215-640-8501 fax
        jneedleman@clarkhill.com
        sgalla@clarkhill.com

        **KING & SPALDING LLP**
        David L. Balser (*Pro Hac Vice* pending)
        S. Stewart Haskins II (*Pro Hac Vice* forthcoming)
        Zachary A. McEntyre (*Pro Hac Vice* forthcoming)
        John C. Toro (*Pro Hac Vice* forthcoming)
        1180 Peachtree Street, N.E.
        Atlanta, Georgia  30309
        Tel.:  (404) 572-4600
        Fax:  (404) 572-5140
        dbalser@kslaw.com
        shaskins@kslaw.com
        zmcentyre@kslaw.com
        jtoro@kslaw.com

        *Counsel for Equifax Information Services, LLC*

- 12 -

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 13, 2017, I electronically transmitted the above using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

Javier L. Merino (078112014)
DANNLAW
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ
07073 Phone: (216)
373-0539 Facsimile:
(216) 373-0536
notices@dannlaw.com

              */s/ Joann Needleman*
              Joann Needleman, Esq